**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

RONALD URBAN,

              Plaintiff,

    v.

ROBERT BERLIN *et al.*,

              Defendants.

Case No. 26 CV 00043

Honorable Sunil R. Harjani

## MEMORDANDUM OPINION AND ORDER

Plaintiff Ronald Urban's ex-wife petitioned an Illinois state court for an emergency order of protection against him and for dissolution of their marriage. The state court granted her petition, and the emergency order prevented Ronald from entering their shared residence and suspended his possession of firearms. After the state court entered a final order of protection and judgment of dissolution of marriage a year later, Ronald challenged the judgments in both state and federal court. Here, proceeding *pro se*, he claims that his ex-wife and her attorney conspired with police and the DuPage County State's Attorney to restrict his ability to litigate his case, depriving him of his constitutional rights in the process. His injuries arise from alleged actions taken in state court, and his requested relief requires a federal judgment on the same issues considered there. Because resolution of his federal claims may result in a judgment that he could use to influence ongoing state proceedings, the Court abstains from exercising its jurisdiction according to the principles of equity, comity, and federalism.

Even if certain claims could be viewed as distinct from the state proceedings, this Court finds that his claims are insufficiently pled under Federal Rule of Civil Procedure 12(b)(6). So, instead of retaining deficient claims on the docket until the state courts have finally resolved the underlying issues, the Court dismisses the case without prejudice.

### Background[1]

In October 2024, Ronald's ex-wife, Defendant Mary Ellen Urban, petitioned for an order of protection, which initiated *Urban v. Urban*, Case No. 2024OP001652, in the Circuit Court of the Eighteenth Judicial Circuit in DuPage County, Illinois. The state court granted an emergency order of protection the same day. The order prevented Ronald from entering their shared residence, and under Illinois law, it suspended his firearm owner's identification card and concealed carry

---

[1] For purposes of reviewing this motion to dismiss, the Court accepts as true, as it must, all factual allegations in the Complaint, which includes documents that are incorporated by reference. *Atlanta Gas Light Co. v. Navigators Ins. Co.*, 164 F.4th 1038, 1046 (7th Cir. 2026). The Court also takes judicial notice of Ronald's related state court proceedings and filings. *J.B. v. Woodard*, 997 F.3d 714, 717 (7th Cir. 2021).

license.[2] The following week, Mary Ellen filed a petition that initiated a divorce proceeding before the same judge, *In re Marriage of Mary Ellen Urban and Ronald R. Urban*, Case No. 2024DN000897. Defendant J. Patrick Nelson represented her in both matters. The emergency order was extended until the state court entered a two-year plenary order of protection in November 2025. The next month, the state court entered a final judgment for dissolution of marriage in the divorce proceeding.

The Complaint alleges various actions by Defendants that were collectively designed to restrict his ability to defend himself in state court. Ronald explains that Defendant Officer Thomas Hogan characterized him as "schizophrenic, delusional, paranoid, and suicidal," and Defendant Chief Thomas Stefanson advanced the same "false narrative" about him. [1] at 3–4. Mary Ellen and Nelson used Officer Hogan's statements and recordings of Ronald that Mary Ellen took in their shared residence to bias the court and to support her petition for the order. *Id.* at 4–5. The order prevented him from entering the residence, which barred access to his litigation materials, including "evidence and attorney-related records." *Id.* at 3–4. Ronald alleges that Mary Ellen delivered his materials to Officer Hogan who would not return them, so he lacked critical evidence during the litigation. *Id.* He also could not receive mail that was relevant to the court proceedings. *Id.* at 4. Additionally, Ronald asserts that Defendants were electronically surveilling him, an issue that the trial court did not adequately adjudicate in his view. *Id.* at 4. Ronald attributes his legal adversity in part to the DuPage County State's Attorney, Robert Berlin, and his office, who he purports acted in retaliation for his reports of fraudulent contractors to the Illinois Attorney General and Illinois Department of Financial and Professional Regulation in 2020. *Id.* at 2–3.

After the state court issued its plenary order and judgment for dissolution, Ronald moved to vacate the former and reconsider the latter. Both motions were pending when Ronald initiated this federal lawsuit. The state court has since resolved the motions, and Ronald has appealed both matters to the Illinois Third District Appellate Court, Case Nos. 3-26-0222 (order-of-protection proceeding), and 3-26-0108 (divorce proceeding).

### Legal Standard

Defendants have moved to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(1) tests the sufficiency of the complaint on subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). In contrast, Rule 12(b)(6) tests the sufficiency of the complaint on the plausibility of its claims as determined by its factual matter. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For both types of motions, the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the non-moving party. *Ctr. for Dermatology & Skin Cancer*, 770 F.3d at 588; *Atlanta Gas Light Co. v. Navigators Ins. Co.*, 164 F.4th 1038, 1046 (7th Cir. 2026). The Court also holds a *pro se* plaintiff to less stringent standards and liberally construes his complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In its analysis, the Court may consider documents referenced in

---

[2] 430 ILCS 65/8.2 (requiring the Illinois State Police to "suspend or revoke and seize a Firearm Owner's Identification Card previously issued under this Act if . . . the applicant or person to whom such card was issued is . . . subject to a protective order . . . ."); 430 ILCS 66/70(b) ("A license shall be suspended if an order of protection . . . is issued against a licensee for the duration of the order[.]").

the complaint, and public court documents and state-court proceedings that are subject to judicial notice. *See J.B. v. Woodard*, 997 F.3d 714, 717 (7th Cir. 2021).

## Discussion

### I.    Abstention

The Court begins with its jurisdiction over Plaintiff's claims. *Flynn v. FCA US LLC*, 39 F.4th 946, 951 (7th Cir. 2022). Nelson moves to dismiss the Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine.

### a.    *Rooker-Feldman*

The *Rooker-Feldman* doctrine precludes federal district courts from adjudicating cases that are (i) brought by "state-court losers" (ii) complaining of injuries caused by state-court judgments (iii) made final before the district court proceedings commenced, and (iv) inviting district court review and rejection of those judgments (v) after having had no reasonable opportunity to raise their federal issues in the state court. *Gilbank v. Wood Cnty. Dep't of Hum. Servs.*, 111 F.4th 754, 766 (7th Cir. 2024) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The Seventh Circuit has relied on the appealability of an Illinois court judgment to determine its finality. *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 400 (7th Cir. 2023) (holding that a judgment was final when it was immediately appealable under Illinois Supreme Court Rule 304). Under Illinois Supreme Court Rule 303(a)(2), a timely post-judgment motion to vacate or reconsider a judgment under 735 ILCS 5/2-1203 delays the judgment's appealability until the trial court issues an order disposing of the motion. *See Royal Oak Condo. Ass'n v. Stevenson*, 277 N.E.3d 907, 913 (Ill. App. Ct. 2025). The motion precludes the necessary final resolution in the state system that warrants *Rooker Feldman* abstention. *See Doe v. Lake County*, 2022 WL 874651, at *4–5 (N.D. Ill. Mar. 23, 2022) (denying application of *Rooker-Feldman* because of a pending motion for reconsideration in the state-court case). The same is true when an appeal is filed, because a pending appeal means that "the state courts [have not] *finally resolve[d]* the issue that the federal court plaintiff seeks to relitigate in a federal forum." *Parker v. Lyons*, 757 F.3d 701, 705–06 (7th Cir. 2014) (citation omitted); *see also* Ill. Sup. Ct. R. 301 ("An appeal is a continuation of the proceeding.").

The relevant state-court judgments are Ronald's order-of-protection and marriage-dissolution judgment. The state court entered a plenary order of protection and a marriage-dissolution judgment, which are generally regarded as final judgments. *See Martinez v. Leon*, 253 N.E.3d 1055, 1061–62 (Ill. App. Ct. 2024); 750 ILCS 5/413(a). However, the dockets reveal that Ronald filed motions under 735 ILCS 5/2-1203 challenging those judgments, which delayed their appealability and the cases' finality. The state court ordered briefing on both motions and continued its hearings on them until January 20, 2026, so they were still pending when Ronald filed this suit. Even now, after resolution of the motions, Ronald is challenging the judgments in state appellate court. Accordingly, at the time of his filing and now, the state courts have not finally resolved the issues that Ronald seeks to relitigate in this federal forum. *See Parker*, 757 F.3d at 706; *Doe*, 2022 WL 874651, at *4–5. Because the state-court judgments are not final, *Rooker-Feldman* does not apply.

3

### b. Abstention Principles

While Defendants do not argue for abstention on other grounds, the Court considers the principles underlying abstention on its own motion as it impacts this Court's subject matter jurisdiction. *Mullen v. GLV, Inc.*, 37 F.4th 1326, 1328 (7th Cir. 2022). In *J.B. v. Woodard*, the Seventh Circuit explained that the principles of equity, comity, and federalism are grounds for abstention even where recognized doctrines are not. 997 F.3d at 721–23. There, the Seventh Circuit considered federal claims arising from the plaintiff's child-custody proceedings in state court. *Id.* at 717–19. Even though the claims did not meet the conditions for abstention under recognized doctrines, the Seventh Circuit still affirmed the district court's decision to abstain and dismiss. *Id.* at 721–25. It held that a ruling on the federal claims would produce a judgment that could be used to influence ongoing state court decision-making. *Id.* Indeed, the timing of the plaintiff's federal suit gave the "clear and unmistakable impression" that he intended to use the federal judgment in that way. *Id.* at 721. The Seventh Circuit reached the same conclusion in *Martin v. Raoul*, 2025 WL 2528501 (7th Cir. Sept. 3, 2025), where this Court dismissed the plaintiff's case based on the principles of abstention. *Id.* at *2. The Seventh Circuit affirmed the dismissal because the plaintiff sought a federal judgment to use in his state appeal, and the principles of abstention "apply with equal force to state appellate proceedings." *Id.*

As in *J.B.* and *Martin*, the principles of equity, comity, and federalism direct this Court to abstain from hearing Ronald's claims. Consider the timing of this federal lawsuit. Ronald sued while he had pending motions to vacate and reconsider the judgments in his state-court proceedings. The dockets show that he litigated the state-court proceedings for months after filing suit and continues in state appellate court. Here, he seeks "injunctive relief requiring correction or expungement of false mental-health labels, return of unlawfully seized materials and confirmation of destruction of copies," and "cessation of reliance on falsified reports." [1] at 8. These are all determinations about the evidence presented to the state court and allegedly relied upon to issue its orders of protection and final judgments. He also requests confirmation of Defendants' purported surveillance of him, which is relief he requested from the state court and that was denied. *Id.* at 4, 8. The timing of his suit, requested relief, and reliance on actions taken during his state litigation leave the clear, unmistakable impression that Ronald desires a federal judgment that can influence ongoing proceedings in state trial or appellate court. *See J.B.*, 997 F.3d at 721. A judgment by this Court would necessarily weigh on the decisions made by the state court, so it must abstain to avoid intruding on its independence.

Having determined that the Court should abstain, the remaining question is whether it should dismiss or stay the case. Generally, the court should stay the case where the plaintiff is unable to seek the same relief in his state court proceeding. *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 600 (7th Cir. 2007). Ronald has not asserted that he would be unable to obtain the relief sought here before the state court, which is "equally capable of enforcing constitutional rights as [a] federal court[]." *Parejko v. Dunn Cnty. Cir. Ct.*, 209 F. App'x 545, 546–47 (7th Cir. 2006) (affirming dismissal of constitutional claims arising from the plaintiff's divorce proceedings under *Younger* abstention); *see Ray v. O'Malley*, 1999 WL 104160, at *3 n.2 (N.D. Ill. Feb. 24, 1999) (dismissing Section 1983 claims under *Younger* abstention where the pleadings did not indicate that damages were unavailable in the state proceedings). And, in any event, dismissal is appropriate because Ronald fails to state plausible Section 1983 claims, regardless of abstention.

## II. Failure to State a Claim

To the extent that any claim could be viewed as not impacted by abstention with a very liberal reading of the *pro se* Complaint, the Complaint would be dismissed for failure to state a claim. As such, the Court reviews Defendants' Rule 12(b)(6) arguments to explain this alternative ground for dismissal.

### a. Nelson and Mary Ellen (Counts II–IV, VI)

Beginning with Nelson, he argues that he is not liable as a private individual. A Section 1983 defendant must have acted under color of state law when they deprived the plaintiff of a constitutional right, privilege, or immunity. *London v. RBS Citizens, N.A.*, 600 F.3d 742, 746 (7th Cir. 2010). Thus, a private person must have acted as a state actor or conspired with one. *Id.*; *Logan v. Wilkins*, 644 F.3d 577, 583 (7th Cir. 2011). To state a conspiracy, the plaintiff must allege facts that infer an understanding between the private individuals and state actors to cause injury, rather than a "bare conclusion" that an agreement exists. *Taylor v. Cir. Ct. of Cook Cnty.*, 2025 WL 601213, at *2 (7th Cir. Feb. 25, 2025) (citation omitted). For example, the plaintiff in *Spiegel v. McClintic*, 916 F.3d 611 (7th Cir. 2019), failed to allege a conspiracy where he only alleged that the private defendants filed false police reports but did not allege that the officers knew that the reports were false or previously agreed to investigate them. *Id.* at 616–17. Similarly, in *Lucky Fella LLC v. Village of Oak Brook*, 2013 WL 1337316 (N.D. Ill. Mar. 29, 2013), the plaintiff concluded that the private defendant acted for the "sole purpose" of interfering with his negotiation with a state official but did not support that conclusion with facts demonstrating an understanding between the defendant and the state official. *Id.* at *3.

Ronald concedes that Nelson is not a state actor. Instead, he maintains that Nelson is liable because he conspired with the other Defendants, who are police officers and prosecutors. Ronald alleges that Officer Hogan and Chief Stefanson projected a false narrative about him, and then Nelson and Mary Urban introduced that narrative into court to use against him. [1] at 3–4. But he does not present facts that reasonably infer that these groups agreed with each other before taking action. Just as the plaintiffs in *Spiegel* and *Lucky Fella* did not allege that the police knew what harm the private defendants intended, Ronald does not allege that Officer Hogan or Chief Stefanson knew that this false narrative would be used by Nelson and Mary Ellen to deprive Ronald of his constitutional rights. *See Spiegel*, 916 F.3d at 616–17; *Lucky Fella*, 2013 WL 1337316, at *3. Nor does he allege that Nelson and Mary Ellen knew that these false narratives would be created. A liberal reading of his factual allegations does not support the bare conclusions that Nelson "acted jointly with state actors," "reached an understanding" with the other Defendants, and "engaged in a coordinated course of conduct" to violate his constitutional rights. [1] at 2, 7.

The Court notes that Mary Ellen has not yet appeared in the case and has not moved to dismiss the claims against her. However, a court may grant a motion to dismiss as to nonmoving defendants when the claims against them are integrally related. *Rosser v. Chrysler Corp.*, 864 F.2d 1299, 1304 (7th Cir. 1988). Ronald asserts the same Section 1983 claims against Mary Ellen as he does against Nelson, her attorney in the state-court proceedings, and he bases those claims on the same set of factual allegations. [1] at 3–8. One exception is the factual allegation that Mary Ellen gave Ronald's litigation materials to Officer Hogan, which he then did not return to Ronald. *Id.* at 3–4. However, Ronald does not describe any circumstance about this exchange that

5

demonstrates that it was more than a "mere act of furnishing information to law enforcement officers." *Spiegel*, 916 F.3d at 617; *see, e.g.*, *Lucky Fella*, 2013 WL 1337316, at *3. His allegations do not reasonably infer a conspiratorial agreement that would allow for Section 1983 liability against Mary Ellen. As such, the same reasoning for dismissal of claims against Nelson as a private individual applies to the claims against Mary Ellen, who is also a private individual.

### b. Officer Hogan (Counts II–IV)

Turning to Officer Hogan, Ronald claims that Officer Hogan violated his Second and Fourteenth Amendments. Although he invokes both constitutional provisions, the Court must analyze his claim under the most applicable one. *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *see, e.g.*, *Avitia v. City of Chicago*, 2024 WL 2274101, at *5 (N.D. Ill. May 20, 2024) (dismissing Second Amendment claim based on the plaintiff's alleged seizure without probable cause and analyzing his challenge under his Fourth Amendment claim). Ronald alleges that the orders of protection deprived him of his "lawful firearm possession and Second Amendment civil status" without a meaningful opportunity to be heard. [1] at 7. The Second Amendment protects an individual's right to keep and bear arms, subject to limitations imposed by state law and regulations to balance the individual interest against public safety. *United States v. Reyna*, 165 F.4th 1056, 1059 (7th Cir. 2026); *Moustakas v. Margolis*, 154 F. Supp. 3d 719, 730 (N.D. Ill. 2016) (citing *Moore v. Madigan*, 702 F.3d 933, 941 (7th Cir. 2012)). Under Illinois law, an order of protection suspends the subject's firearm identification card and concealed carry license while the order is in effect. 430 ILCS 65/8.2, 66/70(b). Ronald does not challenge these Illinois laws or cite any authority asserting that they violate the Second Amendment right to keep and bear arms. Rather, he challenges the lawfulness of his deprivation by the orders of protection without due process, which implicates the Fourteenth Amendment. Therefore, Ronald does not state a separate Second Amendment claim.

As a result, the alleged deprivation of his right to bear arms is more appropriately analyzed as part of his Fourteenth Amendment claim, along with the other alleged deprivations caused by the emergency order of protection. To determine whether Officer Hogan violated Ronald's procedural due process rights under the Fourteenth Amendment, the analysis proceeds in two steps: (1) identifying the protected property or liberty interest at stake; and (2) if the plaintiff was deprived of one of those interests, determining what process was due under the circumstances. *Malhotra v. Univ. of Ill. at Urbana-Champaign*, 77 F.4th 532, 536 (7th Cir. 2023).

Officer Hogan argues that Ronald fails at the first step because Ronald does not allege any deprivation of protected interests. One asserted interest arises from the seizure of his litigation materials. While the Fourth Amendment guarantees the right to be free from unreasonable searches and seizures, a warrantless seizure does not violate this right when one resident of jointly occupied premises provides consent. *Fernandez v. California*, 571 U.S. 292, 298–300 (2014); *United States v. Jones*, 861 F.3d 638, 641–42 (7th Cir. 2017); *see, e.g.*, *United States v. Aldridge*, 642 F.3d 537, 543 (7th Cir. 2011) (finding that the defendant's wife had joint custody over materials that she handed over to the government, and her consent erased the need for a search warrant). Ronald alleges that Mary Ellen gave materials from their shared residence to Officer Hogan. [1] at 3. He does not claim that she lacked joint custody over the materials or authority to consent to a search of the materials. Her consent nullifies the alleged warrantless search and precludes the Court from finding a deprivation of Ronald's Fourth Amendment rights. Ronald also claims that he was

6

deprived of his right of access to courts because he could not obtain evidence or legal mail from his house and was subject to Defendants' electronic surveillance. [1] at 4–6. A denial-of-access claim requires the plaintiff to show that the defendant frustrated his ability to pursue nonfrivolous legal action. *Bell v. Martinez*, 2026 WL 147777, at *1 (7th Cir. Jan. 20, 2026) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). Ronald does not allege that he was unable to raise his concerns in his ongoing state-court proceedings. *See Bell*, 2026 WL 147777, at *1 (dismissing denial-of-access claim where the appellant was not hindered from raising his challenges in ongoing state-court proceedings). On the contrary, Ronald describes filing motions in state court seeking access to his evidence, which demonstrates his access to the court. [1] at 4–5. He also filed a motion to compel a sworn response on whether Defendants were surveilling him, which the state court denied. [1] at 4. *Id.* Ronald may be dissatisfied with the state court's rulings, but his dissatisfaction does not establish a deprived interest.

Ronald, however, sufficiently alleges that the emergency order of protection deprived him of three protected interests. The first is his Second Amendment right, which was restricted when the emergency order was entered against him. The second is his exclusion from his shared residence. The use of one's house is a substantial property interest, and the inability to use it is a constitutionally significant deprivation. *See McGee v. Bauer*, 956 F.2d 730, 735–36 (7th Cir. 1992) (citing *Fuentes v. Shevin*, 407 U.S. 67, 86 (1972)). Ronald alleges that the emergency order impaired his interest in remaining in his home, which satisfies this step. Finally, the third is his claim of reputational damage. Reputation can give rise to a protected interest if it is paired with the alteration of legal status. *Mann v. Vogel*, 707 F.3d 872, 878 (7th Cir. 2013). For example, in *Mann*, the plaintiff alleged that a state agency created a stigma by labeling her as a possible childcare abuser, then closed her childcare center based on that stigma. *Id.* The Seventh Circuit found that she sufficiently stated an occupational liberty interest under the "stigma plus" test, and that the change in her ability to be employed in the childcare field deprived her of that interest. *Id.* at 878–79. In a similar way, Ronald alleges that Officer Hogan perpetuated a stigma about his mental health. [1] at 4. Because of this stigma, they were able to obtain an order of protection that altered his legal ability to access his home and to possess his firearms. *Id.* at 4, 7. Thus, Ronald's allegations meet the stigma-plus test to state a third protected interest.

Proceeding to the second step of the due-process analysis, Officer Hogan argues that Ronald had opportunities to be heard on his alleged deprivations shortly after the emergency order of protection's entry and during the subsequent litigation that ensued. The central question for the Court is whether Ronald had the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (cleaned up). Although the mere showing of an adequate post-deprivation hearing satisfies due process for a random and unauthorized act, more is needed when established state procedures caused the deprivation. *Cannici v. Village of Melrose Park*, 885 F.3d 476, 479 (7th Cir. 2018). Here, where Ronald alleges deprivations by an order of protection that was entered under procedures outlined by Illinois law, the Court must determine whether he received due process despite there being no hearing before the emergency order was entered.

Three factors from the Supreme Court's decision in *Mathews* guide that determination: (i) the private interest affected by the official action; (ii) the risk of an erroneous deprivation of such interest through the procedures used; and (iii) the government's interest. *Mathews*, 424 U.S. at 335; *Penn Cent. Corp. v. U.S. R.R. Vest Corp.*, 955 F.2d 1158, 1163 (7th Cir. 1992) ("[A] court

in applying the [*Mathews*] test asks whether, all things considered, predeprivation process is a reasonable requirement to impose."). The first *Mathews* factor weighs in favor of requiring a pre-deprivation hearing because Ronald had strong private interests in remaining in his home, possessing his firearms, and retaining his reputation, as previously identified. *See, e.g.*, *Simpson v. Brown County*, 860 F.3d 1001, 1008 (7th Cir. 2017) (considering the plaintiff's occupational liberty interest as a strong private interest in the *Mathews* balancing test). However, the next two factors weigh against requiring a pre-deprivation proceeding in this case.

In determining the risk of an erroneous deprivation, the Court considers the Illinois Domestic Violence Act, which established the procedures for orders of protection. Generally, after the filing of a petition for an order of protection, notice is the first step, as in any judicial proceeding. *See* 750 ILCS 60/210. Nevertheless, the Act sets forth limited circumstances under which a court can issue an emergency order without prior notice. 750 ILCS 60/217. For granting exclusive possession of a residence, the court must find an immediate danger of further abuse to the petitioner that outweighs the potential hardships to the respondent. 750 ILCS 60/217(a)(3)(ii). This procedure distinguishes this case from *Simpson v. Brown County*, in which the Seventh Circuit found that a state procedure vested broad discretion to an administrative official and provided only ambiguous rules that greatly risked the revocation of professional licenses without an opportunity to be heard. 860 F.3d at 1009. In contrast, the state court here followed the delineated procedure under the Act. The state court explained in the emergency order that it found Ronald had abused Mary Ellen, continued abuse or irreparable harm was likely, and emergency relief was necessary to protect her. Although Ronald alleges that the order was obtained in part based on Officer Hogan's false report about his mental health, he does not allege an absence of abuse, which was the state court's basis for the emergency order. *See* [1] at 3–4; *Mabes v. Thompson*, 136 F.4th 697, 710–11 (7th Cir. 2025) (finding no due process violation where state officials submitted a successful child-custody-removal petition allegedly containing misrepresentations, but those misrepresentations did not defeat other circumstances supporting removal). The emergency order set a hearing date sixteen days from its entry and was only effective until then. From there, Ronald had an opportunity to be heard on his concerns. The Complaint and the dockets demonstrate that he took advantage of that and future opportunities over the next year of litigation. The Act's procedures mitigate the risk of erroneous deprivations, and the specific allegations in this case do not show a departure from the procedures that weigh against adequate due process.

For the last factor, a legitimate government interest will not automatically override a plaintiff's right to be heard. For example, in *Simpson*, the government's legitimate interest in preventing unqualified individuals from repairing and installing septic systems was not "so serious and so urgent" that the county had to revoke the plaintiff's license before giving him an opportunity to be heard. 860 F.3d at 1009. However, a petition for an emergency order of protection can present a serious and urgent interest that outweighs the need for a pre-deprivation hearing. When the Act passed, the Illinois legislature "decisively rejected the view that domestic violence is a matter only of private concern to the involved parties and expressly recognized that domestic violence is a serious crime against the individual *and society*." *Martinez*, 253 N.E.3d at 1063 (cleaned up). Thus, its laws are "of significant public interest," designed to protect victims of domestic violence. *Id.* In deciding what is needed for that protection, the legislature weighed the exact situation presented in this case when it allowed for emergency orders before notice and hearing under certain conditions. Those conditions were satisfied here when the state court ruled that delaying protection

would risk irreparable harm to or continued abuse of Mary Ellen. Considering the totality of the circumstances, the balance of the *Mathews* factors leads to the conclusion that Ronald has only alleged deprivations for which he received the requisite due process.

### c. State's Attorney Berlin (Counts I–II)

State's Attorney Berlin also moves to dismiss the Fourteenth Amendment claim asserted against him. Ronald blames him for the same injuries stemming from his state proceedings. In addition to finding that the Complaint does not allege insufficient due process, the Court also finds that Ronald's Fourteenth Amendment claim against Berlin fails to identify any involvement by Berlin in the alleged deprivations. Individual liability under Section 1983 requires personal involvement in the alleged constitutional deprivation. *Hernandez v. Lee*, 128 F.4th 866, 871 (7th Cir. 2025). Ronald adds in his response brief that Berlin "tolerated, ratified, and relied upon" the conduct in his state proceedings, such as the narrative about his mental health and surveillance of him.[3] However, the facts in his Complaint do not support this conclusion. They do not state or reasonably infer that Berlin participated in Officer Hogan's report about his mental health or the civil order-of-protection or divorce proceedings, or that he had any relationship with the other Defendants. The only allegations that are specific to Berlin are those describing Ronald's 2020 contractor fraud reports. *See* [1] at 2–3. But even a liberal reading of the Complaint does not infer that they played a role in the proceedings.

Ronald attempts to connect his 2020 contractor-fraud reports and later civil proceedings through his First Amendment retaliation claim. According to Ronald, he reported fraud to the Illinois Attorney General and the Illinois Department of Financial and Professional Regulation in 2020 after losing thousands of dollars to fraudulent contractors. [1] at 2. Then, Berlin allegedly retaliated against him for filing those reports with the subsequent order of protection. *Id.* at 3. To state a First Amendment retaliation claim, Ronald must allege (1) protected activity, (2) a deprivation that would deter future protected activity, and (3) a retaliatory intent. *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 766 (7th Cir. 2021).

Berlin argues that Ronald's reporting is not activity protected by the First Amendment. The Seventh Circuit has explained that the relevant question for determining whether an activity is protected by the First Amendment is "whether the purpose of the plaintiff's speech was to raise issues of public concern." *Houskins v. Sheahan*, 549 F.3d 480, 492 (7th Cir. 2008). Take *Houskins* as an example. There, a social worker filed a police report against a correctional officer for assault and battery. *Id.* at 483. She later sued the sheriff for retaliating against her because of the report. *Id.* at 485. After a jury returned a verdict for the social worker, the Seventh Circuit reversed on appeal. *Id.* at 488, 491–93. It held that the report was only about the social worker's personal interest in having the correctional officer arrested for striking her, which was not a matter of public concern. *Id.* at 492. The record showed no intention to raise public awareness about the wrongdoing or safety of prison employees. Since *Houskins*, other cases have reiterated the necessity of a public concern, even at the pleading stage. *See, e.g., Knox v. City of Chicago*, 2026

---

[3] The Court may consider allegations in the plaintiff's response brief that elaborate on, and are consistent with, his factual allegations in the complaint. *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 752 & n.2 (7th Cir. 2021).

WL 752494, at *5 (N.D. Ill. Mar. 17, 2026) (dismissing First Amendment retaliation claim because the purpose of the plaintiff's police report was to effectuate an arrest, not raise a concern to the wider community); *Rodriguez v. City of Chicago*, 2021 WL 3472513, at *6 (N.D. Ill. Aug. 5, 2021) (same). That is lacking from Ronald's Complaint. Ronald alleges that he reported contractors for fraud after they harmed him but includes nothing indicating that he intended to prevent them from harming others or to raise a general awareness about contractor fraud. *See* [1] at 2. His personal interest in catching those who harmed him is not protected by the First Amendment.

Even if his reports were protected activity, Berlin contends that Ronald fails to allege a plausible link between his reports and the alleged acts that could infer a retaliatory intent. The Supreme Court has held that the causal connection between government defendants' "retaliatory animus" and the plaintiff's "subsequent injury" must be a "but-for" cause. *Nieves v. Bartlett*, 587 U.S. 391, 398–99 (2019); *see Hanks v. Hubbard*, 2022 WL 356732, at *3 (7th Cir. Feb. 7, 2022) (affirming dismissal of retaliation claim because the complaint offered no basis for inferring a link between the plaintiff's grievances and the defendant's subsequent actions). Even assuming that Berlin knew about Ronald's 2020 reports, which is not alleged, the Complaint does not detail Berlin's involvement in the civil proceedings, such as an appearance or filing in the cases or even a conversation with another Defendant. *See* [1] at 2–3. Ronald lacks facts that plausibly infer a retaliatory intent by Berlin. Reading the Complaint liberally, Ronald appears to include Berlin's refusal to investigate his reports as a retaliatory act. However, this is of no consequence because he concedes in his response brief that he was not entitled to any prosecution outcome. He rests his claim only on later acts that are disconnected from his alleged fraud reports.

### a. The State's Attorney's Office and Chief Stefanson (Count V)

As a separate count, Ronald claims that the State's Attorney's Office and Chief Stefanson are liable under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). Despite his phrasing of this claim, *Monell* does not provide a separate cause of action but rather a way to impute liability on a municipality or other local government. *See Strzykalski v. Bd. of Educ. of Summit Hill Sc. Dist. 161*, 2024 WL 580012, at *6 (N.D. Ill. Feb. 13, 2024). *Monell* liability requires that a policy, practice, or custom caused the plaintiff's injury, and that the plaintiff present more than a "naked allegation" of a practice of committing constitutional violations. *Austin v. Cook County*, 2024 WL 3649022, at *2 (7th Cir. Aug. 5, 2024). Although Ronald alleges that his constitutional violations were caused by policies, practices, or customs, including a failure to train, nothing in the Complaint makes this naked allegation plausible. He only identified personal injuries he faced, and fails to allege any facts about the allegedly deficient training, or a policy or practice that instructs members of the State's Attorney's Office or police department to create false narratives, withhold documents, seek protective orders in state court, or refuse to investigate reports of fraud, as he claims Defendants did. *See id.*

To the extent that Ronald's *Monell* claim against Chief Stefanson intends to hold him responsible as a supervisor to Officer Hogan, there is no vicarious liability under Section 1983. *Iqbal*, 556 U.S. at 676. Rather, Plaintiff must allege that Chief Stefanson was personally involved in the alleged constitutional deprivation. *Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021). He may do so by alleging that Chief Stefanson "played some role in the conduct through facilitation, approval, or turning a blind eye for fear of what [he] might see." *Hess v. Garcia*, 72 F.4th 753, 768 (7th Cir. 2023) (cleaned up). A conclusory allegation of approval without facts that demonstrate

knowing involvement will not support liability. *See, e.g.*, *Milbeck v. George*, 171 F.4th 930, 939 (7th Cir. 2026) (affirming dismissal of claims against the officer's supervisor when the plaintiff alleged approval of a temporary felony "want" but no knowledge of the officer's intent to use it as a substitute for a valid arrest warrant).

The Complaint alleges that Stefanson approved, adopted, ratified, or failed to correct Officer Hogan's actions of submitting an allegedly false report, seizing and keeping Ronald's materials, and mischaracterizing his mental health in state documents. [1] at 3–4. However, even reading the Complaint liberally, Ronald does not submit allegations that demonstrate Chief Stefanson's knowledge about or participation in creating the report, repeating the narratives about his mental health, or obtaining Ronald's materials. Without these allegations to create reasonable inference of personal involvement, Ronald fails to state a plausible claim against Chief Stefanson.

### b. Remaining Civil Conspiracy Claims (Count VI)

As a final matter, the Court addresses the conspiracy claims against the state actors. Having found that Ronald does not state a claim against Nelson and Mary Ellen, the private defendants, the conspiracy claims against the remaining public defendants "add nothing but needless complexity" because they may be directly liable under Section 1983. *Ewell v. Toney*, 853 F.3d 911, 918 (7th Cir. 2017); *see also Logan*, 644 F.3d at 583 n.1 (finding that the "conspiracy matters only" to the private defendant and not the "state actors [who are] amenable to suit under 42 U.S.C. § 1983, by virtue of their offices"). In any event, a Section 1983 conspiracy requires the plaintiff to allege both a conspiracy and a constitutional injury. *Ind. Land Trust #3082 v. Hammond Redevelopment Comm'n*, 107 F.4th 693, 700 (7th Cir. 2024). Because Ronald has failed to state plausible First, Second, and Fourteenth Amendment injuries, his conspiracy claims fail, too.[4]

### Conclusion

As described above, the Court finds that the principles of comity, equality, and federalism instruct it to abstain from exercising its jurisdiction over Ronald's federal claims, which seek adjudication of issues presented to the state court and would require a judgment that could unduly influence further state court proceedings. The Court finds dismissal appropriate because, regardless of abstention, Ronald's claims fail to state a claim. He does not state valid claims against Nelson and Mary Ellen, who are private individuals who did not conspire with state actors. He also does not plead a plausible Second Amendment claim. The Complaint does not demonstrate a lack of adequate due process, so Ronald's Fourteenth Amendment claims against Officer Hogan fail. They fail against State's Attorney Berlin, his office, and Chief Stefanson for the additional reasons that they were not personally involved in the deprivations or liable under *Monell*. Finally, Ronald does not allege activity protected by the First Amendment or a retaliatory intent held by Berlin that can sustain his First Amendment retaliation claim.

---

[4] Because the Court finds the Complaint's allegations insufficient to state a plausible claim, the Court does not discuss Defendants' immunity defenses.

11

12

Accordingly, the Court grants Nelson's motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. To the extent that any claims can be viewed liberally to not implicate abstention, Defendants' motions to dismiss under Rule 12(b)(6) are granted.

**SO ORDERED.**

Dated: June 8, 2026

Sunil R. Harjani
United States District Judge